Morning, Your Honors. May it please the Court, my name is William Davidson. I represent the Appellant Occidental Insurance Fire & Casualty Company. We're here today to address essentially three issues. This is a coverage dispute arising out of a wrongful death action and we're here to address three issues to address whether or not the judicial estoppel doctrine can apply to a claimant who has asserted an inconsistent position in a state court wrongful death action and obtained a favorable settlement and then may flip positions and assert a contradictory position in federal court in the declaratory judgment action. The case also raises issues as to whether or not there is even coverage under Occidental's policy in light of its non-trucking endorsement situation here where it provides bobtail coverage to this fact situation and then assuming that there is coverage, what is the amount of coverage? The District Court concluded based upon an ambiguity in the policy that a million dollars in coverage applies. Occidental's policy, we contend the declarations page provides for a half a million dollars of coverage and we believe that the facts are such that only a half a million dollars of coverage should apply if there is indeed coverage. Now the judicial estoppel doctrine is an interesting one for this court, we believe, because there are some issues that perhaps have never been addressed by this court. The District Court Judge Thunheim concluded that state law applies to this case as to whether or not the judicial estoppel doctrine applies because this is a diversity case. This court has indeed previously stated that in a case involving Missouri law that it would apply state law in a diversity case and apply judicial estoppel doctrine under those circumstances. Other circuits however have disagreed and we would urge this court to reconsider that issue and apply . . . Has the United States Supreme Court addressed this particularly since 1993? Not to our knowledge, Your Honor. Most of the judicial estoppel doctrine cases we have seen have arisen with federal question issues and to our knowledge the Supreme Court has not resolved this apparent split amongst the circuits. This court in the Monterey case did state indeed that state law should apply when applying the judicial estoppel doctrine. We would urge this court to revisit that because that issue really wasn't squarely before this court. We've appended the briefs in the Monterey case to our appendices here and I think that if you look at that and more importantly look at the district court action in that matter that you will see that the issue was not truly squarely before this court. Ultimately as many other circuits have decided, this should be a question of federal law. It should be a question of this court and the district courts within its circuit making sure that the judicial integrity is preserved by those particular courts and that's a function of this court as opposed to the myriad ways that the different states amongst this circuit might treat the issue. Well, we're also perpetuating and giving integrity to the state court judgment too. You are. There is a state interest for sure. There is certainly a state interest that for any court to provide comity to the other courts and to provide respect to them that you not allow a party to take one position in one court and then take an inconsistent position in another court. Now, Minnesota... Well, facing the merits, they say alternative pleading. Why isn't this a case of alternative pleading? Well, we're back to near Mother's Day, to the mother of the person, that everybody's responsible for what happened. And that would be a stronger argument, Your Honor, if indeed in the state court wrongful death action they had pled alternative theories, but they did not. They asserted that Mr. Hipp and Hipp's Trucking were acting under the authority of ATS, Airplane Transportation Services, the Great West insured here. And because of that pleading and because of that allegation, they obtained a favorable settlement. In fact, the best settlement possible under ATS's policy limits through Great West, they obtained the full million dollars in coverage. Well, let's assume that they did, that this was legitimate alternative pleading. Either he was working under their authority and Great West provided coverage or he wasn't and accidentally provided coverage. When you say a favorable settlement, now obviously they got the policy limits, but does it make a difference as to what kind of settlement you get? What happens if, for instance, Great West had said, we feel very strongly that we don't provide coverage here, but we also recognize the person was killed, there's a lot of liability, our driver is currently at fault, and we have a million dollars on the line. If we can get out of this case for $100,000, almost cost us that much to defend it, we'd be happy to do it. Would that make a difference if it was a $100,000 settlement versus a million dollar settlement? It would make a difference, Your Honor, and here's how it would make a potential difference. Recall that we are arguing that settlement should be a possible means to apply judicial estoppel doctrine. Appley has basically said, and has cited cases that say, settlement can never be a basis to apply the judicial estoppel doctrine. And that would be an argument for the case below, when you're applying the judicial estoppel doctrine, that for the district court to exercise its discretion as to whether to apply the doctrine, that the settlement wasn't favorable, that it was just a business decision. All manner of different myriad ways that you could address these in future cases, and in any other cases, that will be very fact specific. What we are contending is that the mere fact that there was a settlement, that there was not a jury verdict or a bench trial verdict tried to conclusion, should not be a bar completely to the application of the judicial estoppel doctrine. So we would ask this court to look closely at the issue, not only decide that the federal law applies, but that settlement can be a means to applying the judicial estoppel doctrine. Then we get to the prevailed issue. Gosh, when we get into settlements, how do we know who prevailed? Because typically they start with that long recitation of neither of us admit anything, you know, and all that. How can, does it come out to saying that settlement never counts because we never tell who prevails? Well, other courts have not taken that position, Your Honor. Other circuits have recognized that there may be instances where prevailing counts as a settlement, a favorable settlement. And there may be instances where it's a cost of defense settlement. There may be instances where, particularly in this case, where it is truly a favorable settlement. Based upon the allegations here, they obtained a full policy limit settlement from Great West. That may ultimately be an issue of fact, as it were, a factor for the district courts to consider when they exercise their discretion. Because recall, judicial estoppel is an equitable doctrine. It's the courts trying to protect the integrity of itself and other courts. And when they weigh those different factors, they can take that into account. But to adopt a rule as Appelee suggests, that you may never consider those factors. That regardless of how favorable a settlement or not it may be, you can't consider that as the prevailing factor. Well, so you're saying we would have to send this back and presumably get the Great West Claims Adjuster on the stand to say why they settled this case. That would be, you know, if Appelee wanted to make that argument, they could come forward and put forward the Great West. Because Great West, you say it's a full settlement, but in fact, it's a two and a half million dollar claim. And they got a million dollars. Now, Great West may very well have settled this case because, if I'm not mistaken, Minnesota's a pretty tough state on bad faith. And they may have said, you know, we don't want to, we really have two and a half million dollars of exposure here, not a million dollars of exposure, because if we turn down this settlement demand and then we're found to be covered and we may be on the hook for two and a half million. Not to be facetious, Your Honor, but I'm not going to admit that Minnesota is necessarily a tough state on bad faith. There are certainly standards that apply to bad faith. Short versus Dairyland and the cases that have addressed bad faith in Minnesota. To my knowledge, there was not an excess demand here and we ultimately know that it was in excess of two and a half million dollars verdict case. But this was a policy limits demand. Great West made the decision. And those are facts that are not yet developed for this record. And that would be an argument that Appley could make on remand. And we would ask that this court remand. We recognize that returning to the district court, we might have a very difficult burden to achieve a finding of judicial estoppel. But we feel very strongly that this court should look at what are the standards, what should be the factors, as other courts in the U.S. Supreme Court have looked at. It is a doctrine that should be in the district court's toolbox to use to protect its integrity and the integrity of other courts. Now, assuming that you . . . We haven't addressed the settlement issue. Is that the fair statement of the law? I'm sorry, Your Honor. The Eighth Circuit has not addressed the settlement issue. I believe that's a fair statement, Your Honor. I would encourage this court particularly to look at the Ninth Circuit, the Baum versus Walt Disney World case that we've cited. The re are other circuits that have addressed this and have had no problem instructing district courts how to apply whether or not a settlement constitutes prevailing. Remember, the prevailing is also just one of two or three factors as part of the judicial estoppel doctrine. One that courts, the U.S. Supreme Court, even the Minnesota Supreme Court have recognized, it's not a formulaic process. There's a number of factors to consider. All is part and parcel of the district court's toolbox. Now, if I may, there are a couple other issues here. Assuming that we don't survive the judicial estoppel doctrine or it's not a basis for reversal and remand, we do believe strongly that there are issues relating to whether or not there's even coverage under Occidental's policy, under its non-trucking endorsement. Recall that it provided bobtail insurance coverage. It provided coverage for the tractor and trailer, specifically under the terms of Occidental's policy, when it was not being maintained or operated for or on behalf of others. In this case, hip trucking acting for or on behalf of ATS. And we contend that at a minimum, there are fact issues as to whether or not that exclusion to coverage applies here. And that Judge Thunheim, the district court, erred in failing to give any reasonable inferences in favor of Occidental to at least create a fact issue for a jury to determine whether or not the exclusion applied here. Did you argue that there were fact issues at the district court level or is this one of these cases where both parties came in and said, the facts are undisputed and one side says we win and the other side says the facts are undisputed, we win? I believe it was primarily that, Your Honor. Both sides brought cross motions for summary judgment, partial summary judgment on the one hand and summary judgment on behalf of the other. The exclusion did not apply. So what are the facts that are in dispute? The facts that, I think that really the facts truly aren't in dispute, it's just the ultimate factual conclusion to be drawn from those facts. Whether or not the conduct of Mr. Hip and Hip's trucking was for or on behalf of ATS, for or on behalf of others. Counsel, since this is de novo, we can resolve that, huh? And it is de novo, you may resolve it. And where we also believe that Judge Thunheim erred is in his application of the standard under Minnesota law. He basically required that there be shown a direct link, a direct relationship that this directly benefited ATS. And we contend under the Great West case that we cited in the Minnesota unpublished Court of Appeals decision, that the ultimate benefit test is actually Minnesota's law. And here, because it is diversity, we would ask this court to apply that law. Final point, and I recognize that I'm into my rebuttal time, or soon will be, that the issue of the amount of policy limits. The half million dollars versus the million dollars. Speaking of Minnesota law, you're in trouble on that one, aren't you? Well, Your Honor, I don't think we are, because I You give them two or three different policy limits, and even in Missouri, if you give them two or three, they get the highest. Well, we, there are two limits arguably at issue here. And the deck page itself, the declarations page I'm trying to help you on your rebuttal, go ahead. I appreciate that, Your Honor. When you look at the Curtis v. Home Insurance case, the Minnesota Court of Appeals case that we cited, again, two different policy limits stated within the policy. Ultimately, when you look at Curtis, when you look at Rosthoven, the Minnesota Supreme Court case, you have to look at what the policy limits are in terms of effectuating the intent of the parties to the contract. And here, importantly, there is no evidence from HIP or HIP's trucking that they expected the policy limits were more than a half million dollars. And accordingly, under Rosthoven, the Supreme Court case from Minnesota, if the reasonable expectations of the insured cannot be shown to be greater than the policy limit we contend exists, I don't believe the applique can succeed on that basis. We'll save the rest of our time for rebuttal, Your Honors, and absent any immediate questions here, but thank you. Thank you very much, Mr. Davis, and we will now hear next from Mr. Fugayall. Good morning. May it please the Court, my name is Wilf Legal, and I represent the Sochinskis. We're here seeking the affirmation of the trial court's disposition on the summary judgment issues. Addressing briefly the three questions before the Court, the issue of judicial estoppel, I think the most informative I can be there is that the standard of review is abuse of discretion. This is a doctrine which the U.S. Supreme Court has said in New Hampshire versus Maine is vested to the sound discretion of the trial court. In this case, the trial judge exercised his discretion to determine that, in light of the test, whether federal or whether state, the unifying characteristics that define the doctrine, which is to preserve the integrity of the judicial system, whether the state or the federal system, is vested to the discretion of the court, and you look principally at the second meaningful indication, is there a clear inconsistency? And here, the trial judge determined that there was not an inconsistency in the position. Just procedurally, what had occurred is that the matter had begun in state legal death action, and then the appellee sought to amend in ATS as an additional party and made the allegation that the driver, HIP, was acting under the authority of ATS. Here, the trial judge determined that the general doctrine of logo liability could account for that allegation and still permit a reasonable deduction that the specific task that was being performed at the time that the fatal collision occurred was not advancing the interest of ATS. But you agree logo liability is dying, right? Logo liability is on the far end of the vine and not getting as much nourishment as once it did. I would respectfully submit, however, that here it's used to justify why, in good faith, appellee could have made an allegation that ATS was in this case at all. As long as there's a good faith basis, then both tracks can proceed. And procedurally, the point that I wanted to emphasize is that Mr. HIP was deposed twice, and these issues that take us now clearly out of ATS coverage arose during his second deposition after Occidental began the declaratory judgment action. It looked very much like this was an ATS errand until that second deposition, at which stage the facts emerged that there were essentially three days intervening between the time of the collision and the last act that would have been in service of ATS. That secondly, there were two errands performed on that day. The first was to install clean idle software, and that specific task that HIP performed was not required by the contract agreement with ATS and was found to be, this is based both on undisputed testimony and also determined by the court solely for HIP's own convenience, so that on cold Minnesota days he could allow the truck to continue to idle and keep him warm. That it didn't advance ATS' interests. And then third, the outrigger visit which had occurred that same day, that other errand, the outriggers specifically that were being installed were not necessary for HIP to perform under Mr. HIP says at one time that they could be used, but not for cargo that ATS transported. And that's a more important I thought he implied at one time it could be used for ATS. Outriggers actually he had outriggers for ATS. This is to carry a different kind of thing, windmills, which apparently you orient in a different fashion than you would other equipment. The important part, and this is at appendix 192, HIP had no indication that ATS would ever offer loads for which these new outriggers could be used. Since the function of the trial court is to determine if there are genuine issues of material fact, with this overwhelming evidence at that point that nothing ATS was being advanced on that day and that Mr. HIP was actually returning to his home after the outrigger visit, the court was well within its purview to determine that there were no genuine issues of material fact and to determine in fact that these positions were not inconsistent and therefore regardless of whether we create a federal tool or a state tool, judicial estoppel really doesn't apply here. The trial court did not abuse its discretion. You had mentioned temperature that day. What was the temperature that day? It was on March something or other? This was not a problem in terms of him seeking that day to be warm, Your Honor. This is software that would be used in general throughout the course of his life. I suppose one could make the abstraction that if he's more comfortable, he'd be more inclined to perform work for ATS on a later occasion in colder weather. But here the Seventh Circuit in a case called Hartford v. Occidental on which the trial court drew some solace, it's a 1990 decision says that really here if the focus is on, and we're kind of morphing into the coverage issue question here, the focus is on whose benefit is being advanced and more specifically the focus is on the specific trip at the time. Otherwise, any endorsement could wind up swallowing other coverage as long as you could justify in a general and abstract perspective, well, you may have done that for your personal convenience or you may have done that for some other carrier, but maybe there's an indirect benefit to your real employer. That sort of an analysis would inevitably involve us having multiple coverages applying and so forth. Counsel, you're so effective I missed your position on the settlement issue. Can a settlement be prevailing or not? Your Honor, we took the position that we would like the court to continue to follow the law and that a settlement is not a final disposition. Now wait, the Eighth Circuit doesn't have any law on this, do we? You do not. What I'm saying is that with respect to the settlement issue, we don't get that far because there are so many other reasons why, but if you do reach the settlement question and wish to express a new rule on that for the Eighth Circuit, I think the comments that Judge Malloy was making are very informative here in that this was a decision made by an independent arbitrator that the total value of the claim was $2.75 million. Now that's the disposition. Obviously there was an argument that the value was higher and that the value was lower, but it was set. An informed insurer, very sophisticated, could go, there are any number of reasons why we would want to get out of this, particularly based on the facts that existed at the time. Remember my procedural summary. At that time, we thought this was a close association with the settlement. I could imagine a, because the integrity of the judicial process is important to everyone, whether it's attorneys, whether it's federal or state judges, I could imagine an egregious enough fact pattern where perhaps settlement would be looked at as prevailing because look at how you manipulated the system to achieve this unfair advantage. But if we're dealing in our case, we don't come close to those kinds of facts. So that's why I say I think the settlement issue is an interesting intellectual inquiry, but really doesn't assist us in resolving this case, which should be resolved based on the discretion afforded of the trial judge and the non-inconsistent nature of the pleadings. With respect to the issue of coverage, I've kind of already addressed that with the nature of this bobtail coverage. The issue is, again, however we fashion the tool, and whether it's a federal or a state tool, the issue is on whose behalf or benefit work was being done. I've already commented that I believe that the trial judge was within his purview to say there have to really be genuine issues of fact here, and there really aren't. The issue is, if we were to choose to adopt an unpublished Minnesota Court of Appeals case as its guiding principle on the so-called ultimate benefit test, we would pass that test as well. I simply suggest that we continue to follow the law of the Eighth Circuit. Did the district court, and I'm sorry I can't remember, honest question, did the district court deal with the Great West case, the Minnesota Court of Appeals case? I believe it was drawn to the attention of the court. Well, but is it in the district court's opinion? I don't recall it being in . . . I don't think it is. . . in the opinion. You could correct me. I can tell you this, that our unpublished decisions are the red-haired stepchild, in that they can be considered for their persuasive logic, but they're not precedent in any sense. The Minnesota Supreme Court adopts them. Or the Court of Appeals, in a published decision, says now that we've had three or four unpublished cases, this has developed critical mass. I don't mean to be unduly critical of that. The point that I'm having difficulty with, Judge Benton, is I can't remember the timing of that decision coming out. In 2006, I think, if my first notes are right. Yes, and I think that there's been no case since that. That's what I'm struggling with, is I don't think there's been a case since that that has addressed this issue. He did cite it. He did. He says, he cites it for the proposition, unlike repairs, which are essential to the operation of the truck, HIP's purchase of the outriggers was not connected to keeping its equipment in safe operating condition. Then he cites a National Continental Insurance Company case for that proposition, in Great West Casualty versus Carolina. And there he says, repairs and refueling. He puts it in the category, apparently, of repairs and refueling cases. It's part of a chain site, but not independently analyzed. I think that that was the issue. Have we, as a state court, and thank you, Judge Malloy, but have we as a state court decided which precise test would be used? My point here, to this panel, is that it really doesn't matter which test, in light of the facts, those have to be most compelling. In the remaining time available, I'll just devote a few moments to addressing the issue of the amount of coverage here. And our real principle guiding case there is the Rust-Oven case, which has been consistently followed. Since this is a case arising in diversity, we would look to the authorities of the Minnesota Supreme Court to guide us regarding the nature of the law. And since 1986 in our state, Rust-Oven has indicated that if there's an ambiguity in the amount of coverage, the judicial act to take is to direct the judgment for the higher amount if, and this is the point of appellant's challenge, if to do so would be consistent or not inconsistent with the reasonable expectations of the parties. And here's where- What is the reasonable expectation of the insured? Of the insured, the parties to the doctrine. But you're right. The reasonable expectation doctrine looks at what would an objective reasonable insured have concluded they had. Here the only point at which we're being challenged essentially is, is this within the reasonable expectations of the insured to have the higher coverage amount where there was a prior answer to interrogatory prepared by the insured's lawyer in the wrongful death action saying, we think we've got half a million of coverage. Is that binding on the party? We haven't addressed this question directly in our state, but we've cited the court to the Kelly versus Ellefson decision that indicates, quote, we agree with the Eighth Circuit, which has said that the use of trial pleadings as admissions has been a thorny issue in the law of evidence. Close quote. And the issue is, if we're trying to nail down the expectations of the insured and it's his lawyer speaking in a collateral matter before new information comes to light, should we not permit the development of the facts and instead hold them to the benefit of that earlier statement? And I would suggest respectfully that that would be inconsistent with our state law and with the principles that apply here. For these reasons, we feel that the trial court's disposition was a well-reasoned one, that the summary judgment that was granted should be affirmed. Are there any other questions that I can address this morning? Thank you very much for... Thank you very much, Mr. Fugel. Does Mr. Davidson have additional time? One minute fifty-two. I tell you what, we're going to give you a big break here and we're going to give you four whole minutes here. Appreciate that, Your Honor. I will change a little bit how fast I speak and the issues I address. As Judge Malloy pointed out, the district court was aware of the Great West decision. He did address it at addendum 36 and I believe a couple pages earlier. The point I will note regarding addendum page 36 at the end of the string cite, citing Great West, he then goes on to talk about the fact that the outriggers were not required provides compelling evidence. With all respect, that's not appropriate language in a summary judgment motion. That's compelling evidence to argue to a jury as to the ultimate fact issue of whether or not the conduct was for or on behalf of another, but we don't believe that's appropriate on a summary judgment standard and that that fails to take all reasonable inferences in favor of Occidental as to the issue of coverage. Regarding the policy limit issue, the concerns addressed, we believe, in Rusthoven and in Curtis, we believe those are the key cases for this court to look at, the half million dollars versus the million dollars. Yes, there is certainly an ambiguity, whether under Missouri law, presumably, certainly under Minnesota law. There is an ambiguity here, but ultimately this court and the district court's task is to effectuate the intent of the parties to that contract and the parties to the contract were hip and hips trucking on the one hand and Occidental insurance on the other hand. And there is no evidence, none, as to a reasonable expectation or an expectation, reasonable or otherwise, of policy limits of a million dollars by the insurer. But you're making a little bit of a subjective test and I think the Minnesota courts would beat the podium on objective tests. Well, certainly the reasonable expectation doctrine generally is considered an objective test. But when you look at Rusthoven and when you look at the language they cited and they recognized that when there's an ambiguity, you typically would construe it against the drafter. But they added this important caveat. The court noted, and this is Curtis discussing Rusthoven, the result of such a construction must not be beyond the reasonable expectations of the insured. They don't talk about a reasonable insured, an objective insured, they talk about the insured. And in fact, in Curtis, affidavits were submitted from the insured as to what the policy limits expectations were. And in this case, recognizing full well that the evidence is scant as to Mr. Hip's expectation, we do have the citation to the demand letter from Mr. Laughlin, counsel for the appellee, as to the half million dollars in coverage. But more importantly, the claimant here has failed to offer any evidence that hip or hips trucking expected the policy limits to be greater than the half million dollars stated in the declarations page. And we think that as a proponent of coverage, that they bear that burden, that they have to show something. Since we have extra time, I'll ask you the question. Most insureds would say, I don't know, gosh, there are two of these, I sure want the bigger one, but reasonable expectations when I sign it, I don't have a clue. And wouldn't most courts say objective, they get the higher one? Most insureds, if they were posed that question, they might very well testify as to that. And unfortunately, it's not in the record here. The questions were posed to Mr. Hip, and I would urge this court to simply remand for further factual determination as to that issue. It's an important issue. Certainly the other issues have application in numerous other cases, the judicial estoppel doctrine, the scope of Minnesota's ultimate benefit task, and whether or not on these But when you get down to the nitty-gritty of this case, whether or not half a million dollars or a million dollars in coverage applies, really the parties to this case are interested in that. And if the factual record's undeveloped, we think it's developed enough for you to rule as a matter of law in Occidental's favor. But if it's undeveloped or this court has a concern, we would urge you to remand so that Judge Thunheim can have a better factual record to resolve this, presumably. Thank you. Thank you for the court's time. Thank you very much. The case has been well presented, and the court will take it under consideration and render a decision in due course, and we thank you both for your attendance here this morning.